MICHAEL F. DONNER (SBN 155944)
JONATHAN SOMMER (SBN 209179)
STEIN & LUBIN LLP
The Transamerica Pyramid
600 Montgomery Street, 14th Floor
San Francisco, California 94111
Telephone:   (415) 981-0550
Facsimile:    (415) 981-4343
mdonner@steinlubin.com
jsommer@steinlubin.com

Attorneys for Defendant
CAPITAL GROUP COMMUNICATIONS, INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| COLONIAL STOCK TRANSFER,<br><br>    Plaintiff,<br><br>v.<br><br>GOTTAPLAY INTERACTIVE, INC., a Nevada corporation, and CAPITAL GROUP COMMUNICATIONS, INC., a California corporation,<br><br>    Defendants. | Case No.  C-07-4470 EMC<br><br>Related Case No. C-07-3632 EMC<br><br>**CAPITAL GROUP'S OPPOSITION TO COLONIAL'S MOTION TO DISCHARGE AND CROSS-MOTION TO DISMISS INTERPLEADER ACTION**<br><br>Date:      October 24, 2007<br>Time:     3:00 p.m.<br>Judge:    Hon. Edward M. Chen<br>Location: 15th Floor, Courtroom C |

16010002/356667v3                                                                                               Case No. C-07-04470 EMC

CAPITAL GROUP'S OPPOSITION TO MOTION TO DISCHARGE AND CROSS-MOTION TO DISMISS ACTION

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................ 2
II. ISSUES TO BE DECIDED ................................................................................................ 4
III. FACTUAL BACKGROUND ............................................................................................. 4
    A. Colonial's complaint and motion make no coherent factual allegations ................ 4
    B. On July 25, 2006, Capital Group received 2,000,000 non-refundable shares ........ 5
    C. Gottaplay's SEC filings confirm Capital Group's ownership of the shares ........... 5
    D. When Gottaplay filed a registration statement, it failed to register Capital Group's shares and purported to disclose that the shares had been "cancelled." ............................................................................................................... 6
    E. Capital Group owns, and is the only claimant of, the shares ................................. 6
IV. ARGUMENT ...................................................................................................................... 7
    A. Colonial's Motion To Discharge Does Not Comply With The Local Rules .......... 7
    B. Standards For Capital Group's Motion To Dismiss ............................................... 8
    C. The Interpleader Action Should Be Dismissed ...................................................... 9
        1. Colonial is not the real stakeholder ............................................................ 9
        2. Gottaplay has no claim to the stock certificate in the Court's registry ...................................................................................................... 10
        3. Colonial acted in bad faith on behalf of its principal and thus cannot avail itself of the protection offered by interpleader ............................... 11
        4. An order of discharge could determine only to whom the stock certificate is distributed ......................................................................... 12
V. CONCLUSION ................................................................................................................. 13

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Colorado River Comm'n of Nevada v. Pioneer Companies, Inc.*, 245 F. Supp. 2d 1120 (D. Nev. 2003) .................................................................................................................................. 8, 9, 11

*Farmers Irrigating Ditch & Reservoir Co. v. Kane*, 845 F.2d 229 (10th Cir. 1988) ...................... 11

*Libby, McNeil & Libby v. City National Bank*, 592 F.2d 504 (9th Cir. 1979) .......................... 10, 11

*Lowery v. Brand*, 711 F. Supp. 298 (E.D. Va. 1989) ........................................................................ 9

*Network Solutions, Inc. v. Clue Computing, Inc.*, 946 F. Supp. 858 (D. Colo. 1996) ................... 12

*New York Life Ins. Co. v. Lee*, 232 F.2d 811 (9th Cir. 1956) ......................................................... 13

*State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 1199 (1967) ....................................................... 13

**Statutes**

28 U.S.C. § 1335 ................................................................................................................................ 8

Cal. Comm. Code § 8401, 8407 ...................................................................................................... 12

Fed. R. Civ. P. 12(b)(1), (6) ............................................................................................................... 8

Utah Code Annotated § 70A-8-401 ................................................................................................. 12

**Treatises**

California Practice Guide: Federal Civil Procedure Before Trial, § 10:78 (2007) ......................... 8

**NOTICE OF CROSS-MOTION AND CROSS-MOTION**

PLEASE TAKE NOTICE that the cross-motion of defendant Capital Group Communications, Inc. to dismiss the interpleader action filed by plaintiff Colonial Stock Transfer will be brought for hearing before the Honorable Edward M. Chen, Courtroom C, 15th Floor, United States District Court, 450 Golden Gate Avenue, San Francisco, California, at 3:00 p.m. on October 24, 2007, or at any other time the Court deems appropriate. The motion is based on this notice, the accompanying memorandum of points and authorities, and on all pleadings, files and records in this action.

**STATEMENT OF RELIEF REQUESTED**

Defendant Capital Group Communications, Inc. moves to dismiss the interpleader action filed by plaintiff Colonial Stock Transfer in its entirety for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and failure to state a claim under Fed. R. Civ. P. 12(b)(6). Capital Group further requests that the stock certificate currently in the Court's registry be returned to it.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.
## INTRODUCTION

In its Complaint for Interpleader and Declaratory Relief and its subsequent Motion for Discharge of Stakeholder in Interpleader Action, Colonial Stock Transfer ("Colonial") seeks to discharge all of its potential liability, including in the related action, Case No. C-07-3632, *Capital Group Communications, Inc. v. Gottaplay Interactive, Inc., et al.* Neither the facts nor the law support discharging Colonial from all potential liability, and Colonial has not even met the jurisdictional requirements for filing an interpleader action. Capital Group Communications, Inc. ("Capital Group") files this opposition to Colonial's motion, which, per the Court's September 19 order, will also serve as Capital Group's cross-motion to dismiss the interpleader action for lack of subject matter jurisdiction and failure to state a claim.

Under the terms of a written consulting agreement between Capital Group and Gottaplay Interactive, Inc. ("Gottaplay") dated July 25, 2006, Capital Group received 2,000,000 shares of restricted Gottaplay stock that Gottaplay agreed to register as part of its next registration statement with the Securities and Exchange Commission ("SEC"). Capital Group expected to sell those shares as its only compensation under the agreement, compensation which it needs to fund its operations, salaries, rent and other expenses. When Gottaplay filed its registration statement, it breached its duty to include Gottaplay's shares and instead disclosed, falsely and for the first time, that Gottaplay had purportedly terminated the contract back on February 22, 2007 and cancelled all of Capital Group's 2,000,000 shares on April 20, 2007. In order to enforce its rights, including its right to registration, on July 13, 2007 Capital Group filed suit against Gottaplay and two of its directors in the related action.

Because Gottaplay's failure to register Capital Group's shares prevented Capital Group from selling registered shares as anticipated by the consulting agreement, Capital Group prepared the documentation necessary to sell shares under SEC Rule 144 (which allows a holder of unregistered shares to sell a limited number of them every three months). Capital Group submitted its documentation to the SEC and to Colonial, as Gottaplay's stock transfer agent, to

sell roughly 15% of Capital Group's shares.  As part of that documentation, Capital Group submitted its stock certificate for the 2,000,000 shares to Colonial so that Colonial could issue new certificates reflecting the sale of 15% of the shares, as stock transfer agents are required to do under the Uniform Commercial Code.  The stock certificate was entrusted to Colonial for that sole purpose.

In order to frustrate Capital Group's effort to obtain even this minimal compensation, Colonial, in collusion with Gottaplay, did not respond to Capital Group's instructions to issue the new certificates as Colonial was obliged to do.  In violation of its duties as a transfer agent, Colonial, without Capital Group's knowledge or consent, converted the stock certificate so that it could later file this interpleader action to assist Gottaplay in blocking Capital Group's sale under Rule 144.  Colonial's alleged need for interpleader was the filing of counterclaims by Gottaplay after Colonial had received Capital Group's stock certificate—counterclaims which failed to assert any claim of present ownership of the stock certificate.  Moreover, as specifically disclosed by a Colonial employee to Gottaplay, Colonial and Gottaplay coordinated the filing of the counterclaims and the interpleader in order to have a purported legal basis for blocking the otherwise mandatory issuance of the two certificates reflecting the sale.  Gottaplay's improper effort to block Capital Group's sale under Rule 144—with Colonial's assistance—is a subject of Capital Group's pending motion for preliminary injunction.

Here, Colonial's motion to discharge its liability should be denied, and the interpleader action should be dismissed for the following four reasons: (1) Colonial is not the real stakeholder who lawfully controls the stock certificate, (2) Gottaplay has no adverse claim to ownership of the stock certificate, (3) Colonial acted in bad faith and thus cannot avail itself of the benefits of interpleader, and (4) because any order of discharge would necessarily be limited to distributing the interpleaded certificate, such an order would have no purpose in light of the fact that Capital Group is the undisputed owner of the certificate.

Capital Group requests that the Court dismiss the interpleader action and order the Clerk to return the stock certificate in the Court's registry to Capital Group.

## II.
## ISSUES TO BE DECIDED

1. Whether Colonial became a stakeholder when Capital Group entrusted its stock certificate to Colonial for the limited purpose of processing a sale under SEC Rule 144, and Colonial then converted the certificate.

2. Whether Gottaplay has as a competing adverse claim to the interpleaded stock certificate when it has claimed both in the related action and in its securities filings that it purportedly "cancelled" the stock and that the shares thus no longer exist.

3. Whether an agent, Colonial, acting collusively and in bad faith with its principal, Gottaplay, can be discharged from liability to an owner of stock, Capital Group, by filing an interpleader action.

4. Whether any order of discharge would necessarily be limited to distribution of the stock certificate, and whether any such order would have any purpose in light of Capital Group being the undisputed owner of that stock certificate.

## III.
## FACTUAL BACKGROUND

**A.   Colonial's complaint and motion make no coherent factual allegations.**

Colonial's motion requests "[t]hat pursuant to 28 U.S.C. Section 2361, Colonial be discharged from further liability to any or all defendants named herein under the allegations of the complaint, and further, that Colonial be discharged and relieved of further responsibility in said action and that defendants be permanently enjoined from the further assertion of claims relating to two million shares except by interpleader and assertion of claims in this action." Motion, at 1-2. That is the entire motion.

Colonial's complaint asserts a sole claim for interpleader and alleges that Colonial needs an order from the Court disbursing those shares to the proper owner. Complaint, ¶¶ 17-18. Colonial deceptively alleges that it is "great doubt" as to who has the right to the stock certificate without disclosing that it received the certificate from Capital Group two weeks before the

1  interpleader action was filed. *Id.*, ¶ 17.  And Colonial's purported "doubt" does not arise from
2  any claim by Gottaplay that it owns the stock certificate; instead, Colonial recites that Gottaplay
3  has sought to block Capital Group's sale of shares under Rule 144. *Id.*, ¶¶ 14, 15.

4        As the facts below are generally derived from Capital Group's motion for
5  preliminary injunction (though abbreviated to limit the facts here to those relevant to this cross-
6  motion), Capital Group will cite to the Declaration of Devin J. Bosch in Support of Plaintiff's
7  Motion for Preliminary Injunction ("Bosch Decl."), Docket # 15 (in the related action).

**B.  On July 25, 2006, Capital Group received 2,000,000 non-refundable shares.**

      On July 25, 2006, Capital Group and Gottaplay signed a consulting agreement (the "Consulting Agreement"). *See* Ex. A to Bosch Decl.  Under Paragraph 4 of the Consulting Agreement, Capital Group received 2,000,000 non-refundable shares of Gottaplay, and Gottaplay agreed that it would not demand the return of the shares based on any termination.  Ex. A to Bosch Decl., ¶ 4.

      Of course, the right to own non-refundable shares is of no value if those shares cannot be sold, and restricted stock generally must be registered before it can be sold.[1]  Accordingly, Gottaplay further agreed in paragraph 4 of the Consulting Agreement "that <u>all</u> shares issued to [Capital Group] hereunder shall carry 'piggy-back registration rights' whereby such shares will be included in the <u>next</u> registration statement filed by the company."  Ex. A to Bosch Decl. (emphasis added).

**C.  Gottaplay's SEC filings confirm Capital Group's ownership of the shares.**

      On August 8, 2006, Gottaplay filed a Schedule 13D with the SEC that disclosed the transfer of 2,000,000 shares to Capital Group.  Gottaplay's Schedule 13D disclosed that Capital Group had sole dispositive power over 2,000,000 shares representing 6.97% of the outstanding stock of Gottaplay. *See* Ex. B to Bosch Decl., Items 1, 9 & 13.  Further confirming Capital Group's ownership of the shares, Gottaplay caused to be issued to Capital Group a stock certificate dated September 25, 2006 that evidenced its ownership of 2,000,000 shares. *See* Ex. C

---

[1] Unregistered shares of restricted stock can be sold under Rule 144, but only in limited amounts.

to Bosch Decl.

On January 16, 2007, Gottaplay filed a Form 10-KSB/A in which it again disclosed that it had issued 2,000,000 shares to Gottaplay:

> On July 25, 2006, we entered into a consulting agreement with Capital Group Communications and under which the terms of the agreement [sic], in consideration of the services undertaken, we issued 2,000,000 shares of common stock with a fair market value of $1.50 per share.

*See* Ex. D to Bosch Decl., at 24.

### D. When Gottaplay filed a registration statement, it failed to register Capital Group's shares and purported to disclose that the shares had been "cancelled."

On May 7, 2007, Gottaplay filed a Form SB-2 registering shares and stock warrants of Gottaplay. Ex. F to Bosch Decl. Gottaplay did not include Capital Group's shares in the registration, in violation of its agreement in paragraph 4 of the Consulting Agreement "that all shares issued to [Capital Group] hereunder shall carry 'piggy-back registration rights' whereby such shares will be included in the next registration statement filed by the company."

As part of its May 7, 2007 registration statement, Gottaplay disclosed a purported termination of the Consulting Agreement and "cancellation" of Capital Group's shares:

> In July 2006, we entered into a one-year consulting agreement with independent financial and business advisor, in which the consultants will provide business expertise, advice and negotiations in strategic corporate planning, private financing, mergers and acquisitions, and such other business areas as deemed necessary by our management. Under the terms of the agreements, the consultants received 2,000,000 shares of common stock. … On February 22, 2007, we terminated this arrangement due to non-performance. <u>On April 20, 2007, we cancelled all shares of stock issued to this advisor.</u>

Ex. F to Bosch Decl., at 32 (emphasis added). Therefore, according to Gottaplay, Capital Group's stock no longer exists.

### E. Capital Group owns, and is the only claimant of, the shares.

After learning of the purported cancellation of its shares, Capital Group repeatedly confirmed with Gottaplay's stock transfer agent, Colonial, that its shares remained valid and

outstanding. Bosch Decl., ¶ 24. Accordingly, Capital Group decided that it would begin selling shares under SEC Rule 144, which allows a company to sell a limited number of unregistered shares. *Id.*, ¶ 28. Capital Group sent the documentation to Colonial necessary to sell shares under Rule 144 in order to realize some interim compensation pending Capital Group's efforts to have all of its shares registered. *Id.*

Normally, requests to sell under Rule 144 are routinely processed by the stock transfer agent. *Id.* In this case, however, Colonial stated to Capital Group that Gottaplay was requesting that Colonial not honor the Rule 144 request. *Id.*, ¶ 30. Even worse, Colonial was actively colluding with Gottaplay in devising a strategy by which Gottaplay would file a counterclaim in order to conjure up some purported legal basis for not honoring Capital Group's sales under Rule 144. *Id.*, ¶ 30.

On or about August 14, 2007, Capital Group submitted its documentation to Colonial, including its stock certificate, to sell 311,011 shares. *Id.*, ¶ 28 & Ex. K. That was the first time Capital Group had ever relinquished its stock certificate and did so only for the limited purpose of selling shares under Rule 144. *Id.*, ¶ 28. Colonial did not process the request or even return the certificate. Instead, and without previously notifying Capital Group, Colonial improperly retained the certificate and on August 29 filed this interpleader action claiming that there was a dispute as to ownership of the shares. *Id.*, ¶ 29. In its interpleader action, Colonial misleadingly suggested that it was the holder of disputed shares and had doubt as to who to give them to, when in fact Capital Group had ceded control of those shares to Colonial only two weeks earlier for the limited purpose of processing its Rule 144 sale. *See* Colonial's Complaint, ¶ 17.

Neither in its interpleader action nor in its motion for discharge has Colonial identified any claim of ownership of the shares made by Gottaplay. Every assertion made by Gottaplay has been to the contrary, i.e., that the shares have been cancelled.

## IV.
## ARGUMENT

**A.  Colonial's Motion To Discharge Does Not Comply With The Local Rules.**

Colonial's motion consists of two sentences and does not comply with Local Rule

7. It should be denied on that ground alone. Colonial's motion requests that Colonial "be discharged from further liability to any or all of the defendants" and "be discharged and relieved of further responsibility in said action and that defendants be permanently enjoined from the further assertion of claims relating to two million shares except by interpleader and assertion of claims in this action." Motion, at 1-2.

On the one hand, Colonial appears to seek discharge from any liability; on the other hand, Colonial states that claims may be asserted in this action against Colonial. Colonial does not explain why it should be exonerated from all potential liability, or, alternatively, why claims against Colonial should be asserted in this action but not in the related action. As there is no memorandum of points and authorities, no statement of requested relief and no proposed order, among other things, Capital Group has been placed in the position of opposing an unexplained, unreasoned motion that does not comply with Local Rule 7.

Colonial's motion should also be denied for the same reasons that Capital Group's motion to dismiss should be granted, as set forth below.

**B.     Standards For Capital Group's Motion To Dismiss**

A federal court has subject matter jurisdiction over an interpleader claim only if the requirements for interpleader are met, whether interpleader is asserted under Rule 22 or 28 U.S.C. § 1335. *See generally* California Practice Guide: Federal Civil Procedure Before Trial, § 10:78 (TRG 2007). Generally, the five requirements are: (1) the plaintiff must be the stakeholder that controls the interpleaded property, (2) there must be two or more adverse claimants claiming entitlement to the stake, (3) the claims must be adverse, (4) minimal diversity must exist, and (5) venue must be proper. *Colorado River Comm'n of Nevada v. Pioneer Companies, Inc.*, 245 F. Supp. 2d 1120, 1125 (D. Nev. 2003). This case can be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and also under Fed. R. Civ. P. 12(b)(6) because Colonial has failed to state these five elements of an interpleader claim, which is Colonial's only claim in its complaint.

A defendant moving to dismiss an interpleader complaint for lack of subject matter jurisdiction has the option of including extrinsic evidence to defeat any of the five elements. *Id.*

at 1124. If it does so, the opposing party must then present affidavits or other evidence sufficient to establish that the Court does in fact possess subject matter jurisdiction. *Id.* The Court is free to hear evidence regarding jurisdiction and resolve factual disputes as necessary. *Id.* Thus, the facts in the Bosch Declaration related to Colonial's collusion with Gottaplay may properly be considered by the Court. In addition, most of the facts at issue are judicially noticeable facts, i.e., Gottaplay's claim in its public securities filings that the shares were cancelled and its identical claim in its Counterclaim in the related action.

**C.    The Interpleader Action Should Be Dismissed.**

   **1.    Colonial is not the real stakeholder.**

Colonial is not the real stakeholder; it is attempting to convert itself into a stakeholder through the unlawful conversion of Capital Group's property. True stakeholders, such as life insurance companies, lawfully possess and control property which they are contractually obligated to pay out, i.e., the life insurance proceeds. A life insurance company that interpleads $1,000,000 does so from its own funds; it does not obtain the money under false pretenses from its insured and then interplead it.

*Lowery v. Brand*, 711 F. Supp. 298 (E.D. Va. 1989), illustrates that the mere deposit of funds into the Court's registry is not enough to convert a non-stakeholder into a stakeholder. In that case, the executrix of a decedent's estate commenced an interpleader action because of concern about how to distribute insurance proceeds under the terms of the will. *Id.* at 300. The insurer deposited the proceeds of the policy into the court's registry pending resolution of the question, but the insurer was not a party to the action. *Id.* The court dismissed the case for lack of subject matter jurisdiction because the insurer, not the executrix, was "the real stakeholder." *Id.* at 301. The court observed that the insurer always had possession or control of the money and interpleader is not a "malleable bill of peace capable of being bent to serve as a means of resolving any multiparty dispute." *Id.*

Capital Group, not Colonial, has at all times had lawful control and possession of the 2,000,000 shares of stock issued by Gottaplay that Colonial deposited into the Court's registry. Capital Group yielded possession of the stock certificate for these shares on August 14,

2007, during the pendency of Capital Group's related action against Gottaplay, for the <u>limited purpose</u> of selling 311,011 shares of Gottaplay. As set forth in the Bosch Declaration, which was previously filed with this Court, Colonial, in collusion with Gottaplay, accepted the stock certificate from Capital Group for the purpose of effectuating the proposed transfer and sale and then, without Capital Group's knowledge and consent, violated Capital Group's ownership rights by (1) failing to comply with Capital Group's transfer request; (2) keeping the certificate for purposes other than those to which Capital Group consented; (3) conspiring with Gottaplay on how to best delay and frustrate Capital Group's transfer request; and (4) depositing the stock certificate with the Court.

As Capital Group, not Colonial, had the legal right to control and possess the stock certificate at the time of filing of the interpleader action, Colonial is <u>not</u> the real stakeholder and therefore has no right to interplead.

2. **Gottaplay has no claim to the stock certificate in the Court's registry.**

Interpleader requires adverse claims to a fund controlled by the stakeholder who owes a single obligation to distribute the fund, creating the risk of inappropriate multiple liability. For example, an insurer has a single obligation to distribute life insurance proceeds, but there could be competing claimants to the fund.

In contrast, Gottaplay has made no claim to ownership of the stock certificate,[2] and any obligation owed by Colonial to Gottaplay is distinct from Colonial's obligations to Capital Group. Where the interpleading party owes separate obligations to different persons, the obligor cannot avail itself of interpleader in order to reduce its risk of multiple liability arising from separate obligations. In *Libby, McNeil & Libby v. City National Bank*, 592 F.2d 504 (9th Cir. 1979), the plaintiff buyer of goods attempted to interplead funds owed to a bankrupt seller in order to try to limit its liability to the amount owed to the bankrupt seller. *Id.* at 506. The Ninth Circuit held that there was no subject matter jurisdiction under the interpleader statute because the plaintiff buyer was potentially liable both to a bank as the assignee of the bankrupt seller's

---

[2] Though more than 20 days have elapsed since the filing of this action, Gottaplay, a purported defendant, has not responded to the complaint or asserted any claim to the interpleaded certificate.

accounts receivable and also to the suppliers of the seller under other contracts. *Id.* at 506-08. While the buyer might face multiple liability in spite of only having purchased a fixed amount of materials, the obligations were separate, which justified potential double recovery. *Id.* at 509. *See also Colorado River*, 245 F. Supp. 2d at 1128 (dismissing for lack of subject matter jurisdiction where plaintiff owed different obligations to alleged claimants).

Colonial does not owe a single obligation to competing claimants. Capital Group owns the shares and gave them to Colonial. Gottaplay claims that the shares are cancelled and that Colonial should therefore dishonor the shares. Complaint, ¶ 14. In other words, Capital Group's claims is based on ownership of the shares while Gottaplay's instructions to its transfer agent are based on the alleged invalidity of the shares. In its securities filings and in the related action, Gottaplay has repeatedly claimed that "on or about April 20, 2007 Gottaplay canceled the stock certificate issued to [Capital Group]." Counterclaim, ¶ 25. Even if Gottaplay were to threaten to sue its agent, Colonial, for processing the request, such a threat would be based on principal-agency relationships not relevant to the question of who is making a claim of present ownership of the stock certificate in the Court's registry. The bottom line is that Gottaplay does not claim to own the stock, it claims to have cancelled it.

3. **Colonial acted in bad faith on behalf of its principal and thus cannot avail itself of the protection offered by interpleader.**

As interpleader is an equitable doctrine, courts have required plaintiffs to meet equitable standards in addition to the five general required elements for interpleader. The typical interpleader plaintiff is an innocent stakeholder who is subject to competing claims. *Farmers Irrigating Ditch & Reservoir Co. v. Kane*, 845 F.2d 229, 232 (10th Cir. 1988). It is the general rule that a party seeking interpleader must be free from blame in causing the controversy, and where he stands as a wrongdoer with respect to the subject matter of the suit or any of the claimants, he cannot have relief by interpleader. *Id.* (tortfeasor could not avail itself of interpleader). For example, an administrator of Internet domain names cannot interplead a disputed domain name when the administrator is also a defendant to a breach of contract claim alleging that the administrator breached its contract with one of the competing claimants to the

domain name. *Network Solutions, Inc. v. Clue Computing, Inc.*, 946 F. Supp. 858, 861 (D. Colo. 1996). In such a case, the interpleading party is part of the larger dispute, not a mere innocent stakeholder.

Likewise, Colonial, acting collusively and in bad faith with its principal, Gottaplay, cannot simply interplead shares that it converted and then ask for a discharge of its liability. Not only is Colonial liable for converting Capital Group's shares, it also breached its statutory duty to assist in processing the Rule 144 sale. Section 8401 of the California Commercial Code mandates that if a security is presented to an issuer with a request to register[3] a transfer of the security, the issuer shall register the transfer provided that certain conditions were met (such as the security being registered in the requesting party's name, appropriate endorsement, etc.). Cal. Comm. Code § 8401(a). The issuer is liable for delay damages for failure to register a transfer of the security. *Id.*, § 8401(d). Section 8-407 specifically imposes separate liability for delay on the transfer agent in addition to the issuer.[4] *Id.*, § 8407 & cmt. 1.

On August 14, 2007, Capital Group demanded that Colonial register the transfer of 311,011 shares of Gottaplay stock. Colonial responded by converting the stock and breaching its statutory duty to register a transfer of the stock. Accordingly, Colonial became a wrongdoer with respect to the subject matter of the suit and cannot avail itself of interpleader.

4. **An order of discharge could determine only to whom the stock certificate is distributed.**

Interpleader is conditioned on the deposit of property sufficient to cover all damages for which the interpleading party may be liable, and an order of discharge is limited to distributing what is interpleaded, i.e., the stock certificate which is in the Court's registry. Colonial has not deposited property sufficient to cover its potential liability, and therefore Colonial cannot be discharged "for further liability to any or all of the defendants." Colonial's

---

[3] In this context, "registering" refers to processing the transfer of a security from the owner to a buyer, not registering the security with the SEC.

[4] These provisions derive from Article 8 of the Uniform Commercial Code, and Utah, where Colonial is located, has also adopted these provisions of the Uniform Commercial Code. *See* Utah Code Annotated § 70A-8-401 *et seq.* As there is no conflict between California and Utah law as to this liability of a transfer agent, Capital Group is citing California law.

1  Motion, at 1. Such relief would improperly preclude claims for damages under the California
2  Commercial Code as well as common law claims such as conversion.

3        It is well-settled that the mere deposit of some property, such as insurance
4  proceeds, does not wipe out the claims of persons asserting rights against the insurer or other such
5  interpleading parties. *New York Life Ins. Co. v. Lee*, 232 F.2d 811, 814 (9th Cir. 1956). In *Lee*,
6  the insurer deposited the proceeds of a policy, but it was also potential liable for attorney's fees
7  and interest. *Id.* The Ninth Circuit affirmed the dismissal of the interpleader action because the
8  interpleading party had not deposited any amount to cover such damages and observed that
9  interpleader was not intended to destroy rights acquired under state law. *Id.* at 812, 814. *See also*
10 *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 1199, 1205 (1967) (order of discharge
11 appropriate only where fund itself marks the outer limits of the controversy).

12       Colonial has not deposited any amount to cover its liability for delay damages
13 under the California Commercial Code or for damages based on its acts of conversion. Colonial
14 cannot avoid damages for failure to honor a transfer request, as required by the code, simply by
15 converting Capital Group's stock certificate and interpleading it into the Court's registry. If that
16 were the case, every transfer agent could avoid its statutory duty to register a transfer by
17 interpleading the stock certificate.

## V. CONCLUSION

20       The Court should dismiss the interpleader action with prejudice and order the
21 Clerk to return the stock certificate to Capital Group.

Dated: October 3, 2007                STEIN & LUBIN LLP

By: /s/ Jonathan E. Sommer
     Jonathan E. Sommer
     Attorneys for Defendant
     CAPITAL GROUP COMMUNICATIONS, INC.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

16010002/356667v3

-i-